UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

FRANK WASHINGTON,

    Defendant.
_____/

Case No. 16-20419

HON. MARK A. GOLDSMITH

**OPINION & ORDER
DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE (Dkt. 56)**

Defendant Frank Washington pleaded guilty to one count of using a firearm during and in relation to a crime of violence as well as four counts of interfering with commerce by robbery. Rule 11 Plea Agreement (Dkt. 29). On March 15, 2017, Judge John Corbett O'Meara sentenced Washington to 120 months' imprisonment. Judgment (Dkt. 38).[1] Washington is currently incarcerated at the Brooklyn Metropolitan Detention Center in Brooklyn, New York. His projected release date is December 6, 2024. Inmate Data (Dkt. 59-1).

This matter is now before the Court on Washington's motion for compassionate release (Dkt. 56).[2] Having considered all briefing and record materials submitted by the parties, the Court denies Washington's motion.[3]

---

[1] This case was reassigned to the undersigned on January 12, 2018.

[2] Washington's motion is attached as Exhibit B to his filing. See Mot. at PageID.234–236.

[3] Because oral argument will not aid the Court's decisional process, the motion will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2). In addition to the motion, the briefing includes the Government's response (Dkt. 58) and Washington's reply (Dkt. 60).

## I. ANALYSIS

The First Step Act (FSA) modified the statute concerning the compassionate release of federal prisoners, 18 U.S.C. § 3582(c), such that district courts may entertain motions filed by incarcerated defendants seeking to reduce their sentences. United States v. Ruffin, 978 F.3d 1000, 1003–1004 (6th Cir. 2020).[4] Before granting a compassionate release motion, a district court must engage in a three-step inquiry: (i) the court must find that "extraordinary and compelling reasons warrant [a sentence] reduction"; (ii) it must ensure "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission"; and (iii) it must "consider[] all relevant sentencing factors listed in 18 U.S.C. § 3553(a)." United States v. Jones, 980 F.3d 1098, 1101 (6th Cir. 2020) (citing 18 U.S.C. § 3582(c)(1)(A)). If all of those requirements are met, the district court "may reduce the term of imprisonment," but it need not do so. 18 U.S.C. § 3582(c)(1)(A).

Regarding the first step of the inquiry, the United States Court of Appeals for the Sixth Circuit has held that, with respect to motions for compassionate release filed by imprisoned individuals, "extraordinary and compelling" reasons are not limited to those set forth in U.S.S.G. § 1B1.13. Jones, 980 F.3d at 1109. It has further held that "[u]ntil the Sentencing Commission updates § 1B1.13 to reflect the [FSA], district courts have full discretion in the interim to determine whether an 'extraordinary and compelling' reason justifies compassionate release when an imprisoned person files a § 3582(c)(1)(A) motion." Id.

---

[4] Before an inmate moves for compassionate release under § 3582(c)(1), the inmate must either exhaust his or her administrative remedies with the Bureau of Prisons (BOP) or wait 30 days from when the inmate filed a request with his or her warden. 18 U.S.C. § 3582(c)(1)(A); United States v. Alam, 960 F.3d 831, 832 (6th Cir. 2020). Here, the Government concedes that "it appears that Washington has satisfied the exhaustion requirement." See Resp. at 8.

2

The Court considers in turn whether (i) extraordinary and compelling circumstances exist and (ii) the § 3553(a) factors support Washington's release.

### A. Extraordinary and Compelling Circumstances

Washington argues that the COVID-19 pandemic is an extraordinary and compelling reason to release him. Mot. at PageID.234. Washington also mentions that his young son "needs his [f]ather for things his mother cannot teach" and that he has undertaken rehabilitation efforts while incarcerated Id. at PageID.235–236. The Government construes Washington's family circumstances and rehabilitation as additionally-asserted extraordinary and compelling reasons for release, see Resp. at 13–15, and the Court will as well. The Court addresses each asserted reason in turn.

#### i. COVID-19

With respect to motions for compassionate release premised on a defendant's fear of contracting and suffering severe illness from COVID-19, the Sixth Circuit has held that "generalized fears of contracting COVID-19, without more, do not constitute a compelling reason" to grant compassionate release. United States v. Ramadan, No. 20-1450, 2020 WL 5758015, at *2 (6th Cir. Sept. 22, 2020). Prior to the development of the COVID-19 vaccines, courts would generally consult the guidance on high-risk factors published by the Centers for Disease Control and Prevention (CDC) to determine whether a defendant's specific conditions placed the defendant at a higher risk of suffering severe illness from COVID-19. See United States v. Elias, 984 F.3d 516, 521 (6th Cir. 2021). However, following the development of the vaccines, courts now examine whether a defendant has been offered a COVID-19 vaccine, because "a defendant's incarceration during the COVID-19 pandemic—when the defendant has access to the COVID-19 vaccine—does not present an 'extraordinary and compelling reason' warranting a sentence

3

reduction." United States v. Lemons, 15 F.4th 747, 751 (6th Cir. 2021). Under either approach, Washington's motion fails.

Washington argues that his medical conditions include bronchitis and asthma. The CDC recognizes "chronic bronchitis" and "moderate to severe" asthma as conditions that can make an individual "more likely to get very sick from COVID-19."[5] Washington does not specify whether his bronchitis is chronic or acute or the severity of his asthma. Nor do his health records reflect a diagnosis of either chronic bronchitis or moderate to severe asthma. See BOP Health Records (Dkt. 59-2). In fact, a clinical note from April 12, 2021 reflects that although Washington reported having a history of asthma and recently having a nebulizer treatment, his purported history of asthma "was not substantial by the medical record," and "[n]either was the 'recent neb[ulizer] treatment.'" Id. at PageID.230.[6]

But even assuming that Washington's lung conditions are high-risk conditions identified by the CDC, his fear of suffering severe illness from COVID-19 is non-compelling because he has been offered—but refused—a COVID-19 vaccine. See Lemons, 15 F.4th at 751 ("[A] defendant's incarceration during the COVID-19 pandemic—when the defendant has access to the COVID-19 vaccine—does not present an 'extraordinary and compelling reason' warranting a sentence reduction."). Specifically, Washington was offered a Moderna vaccine in April 2021, but he declined to accept it. BOP Health Records at PageID.359.

---

[5] CDC, "People with Certain Medical Conditions," https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Mar. 23, 2022).

[6] In his reply, Washington adds that he suffers from dysthymia (i.e., persistent depressive disorder) and anxiety disorder. Reply at PageID.381. His health records do not confirm these purported diagnoses. Even if Washington does suffer from these conditions, his access to the vaccine renders his fear of COVID-19 non-extraordinary and non-compelling, as explained below.

While it is true that a prisoner who is "unable to receive or benefit from a vaccine" may still be able to show "extraordinary and compelling reasons" warranting a sentence reduction, Washington has not shown that he is medically unable to receive or benefit from the vaccine. Lemons, 15 F.4th at 751 (citing United States v. Ugbah, 4 F.4th 595, 597 (7th Cir. 2021)) (affirming denial of compassionate release to prisoner who refused a vaccine and "never contended that he is medically unable to receive or benefit from the available vaccines"). Rather, Washington argues that his refusal of the vaccine should be forgiven because the vaccine is not 100% effective against the Omicron variant. Reply at PageID.381. Lemons makes no such exception. Further, this Court and others have rejected similar arguments. See, e.g., United States v. Walker, No. 12-20287, 2022 WL 834008, at *3 (E.D. Mich. Mar. 21, 2022) (rejecting prisoner's argument that "his vaccination status should not preclude granting him compassionate release, as the recent emergence of several variants has increased the frequency of breakthrough cases"); United States v. Butler, No. 18-cr-20801, 2022 WL 317753, at *4 (E.D. Mich. Feb. 2, 2022) ("Because existing COVID-19 vaccines diminish the health risks of the Delta and Omicron variants, and these vaccines are available to all federal prisoners, incarceration itself does not increase the danger of COVID-19 to Defendant."); United States v. Dale, No. 92-81127, 2022 WL 163612, at *4 (E.D. Mich. Jan. 18, 2022) (holding that the defendant's argument that "the risk of breakthrough infections persists" even though he had received two doses of a COVID-19 vaccine was "undercut[]" by Lemons).

Washington's fear of COVID-19—as well as his contention that close confinement conditions at his prison increase his risk of severe illness from the virus—are further undercut by the available data. Currently, there are no actively confirmed inmate cases of COVID-19 at MDC

Brooklyn, and only one confirmed staff case.[7] Further, of the 1,660 inmates at MDC Brooklyn,[8] 1,114 have been vaccinated (67.10%).[9]

For these reasons, Washington's fear of contracting and suffering severe illness from COVID-19 is not a compelling and extraordinary reason to release him.

### ii. Family Circumstances

To the extent that Washington argues that he should be released so that he can help care for his minor son, this argument fails. Unfortunately, "[t]he care of minor children while a parent is incarcerated is a problem faced by many convicted defendants." United States v. Kibby, No. 2:19-cr-179, 2021 WL 2009568, at *3 (S.D. Ohio May 20, 2021). The policy statement from the sentencing guidelines (which is not binding on this Court when determining whether extraordinary and compelling reasons exist, but nevertheless is instructive) contemplates compassionate release upon only the "death or incapacitation of the caregiver of the defendant's minor child . . . ." U.S.S.G. § 1B1.13 app. n.1(C); see also United States v. Daniels, No. 19-cr-00204, 2022 WL 164543, at *5 (M.D. Tenn. Jan. 18, 2022) ("Although § 1B1.13 is not binding, this policy guidance is highly persuasive authority in resolving motions for compassionate release.") (punctuation modified). Washington does not contend that his son's caregiver has died or become incapacitated. Rather, it appears that Washington merely wishes to be a more present parent in his son's life. While an understandable desire, it is not an extraordinary and compelling reason to release him.

---

[7] BOP, "COVID-19 Cases," https://www.bop.gov/coronavirus/ (last visited Apr. 5, 2022).

[8] BOP, "MDC Brooklyn," https://www.bop.gov/locations/institutions/bro/ (last visited Mar. 23, 2022).

[9] BOP, "COVID-19 Vaccine Implementation," https://www.bop.gov/coronavirus/ (last visited Apr. 5, 2022).

### iii. Rehabilitation

To the extent that Washington argues that his rehabilitation efforts warrant releasing him, this argument also fails. "Congress was emphatically clear that '[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.'" United States v. Hunter, 12 F.4th 555, 572 (6th Cir. 2021) (quoting 28 U.S.C. § 994(t)). Washington has not shown any other reason to release him, and, therefore, his rehabilitation is insufficient to constitute an extraordinary and compelling reason to release him.

Thus, Washington has not shown an extraordinary or compelling reason to grant him compassionate release. Even if he had, his release would still be unwarranted based on the § 3553(a) factors, as explained below.

### B. Section 3553(a) Factors

Before granting a sentence reduction under the FSA, the Court must consider the § 3553(a) factors, which include the nature and circumstances of a defendant's offenses, the seriousness of the offenses, the need to promote respect for the law, and the need to protect the public from further crimes by the defendant.

Washington's crimes were undoubtedly serious. He robbed Family Dollar and Auto Zone stores in Detroit, Michigan. Rule 11 Plea Agreement at 2. In committing these robberies, Washington used and brandished a firearm. Id. Other courts have agreed that the § 3553(a) factors counsel against compassionate release where a prisoner committed a robbery that involved firearms. See, e.g., United States v. Wojciechowski, No. 3:12-CR-104-RGJ, 2021 WL 2604041, at *6 (W.D. Ky. June 24, 2021).

In addition to the instant crime, Washington "had twice before been before a court for juvenile offenses including property damage and assault." Resp. at 16 (citing Presentence

7

Investigation Report at 59–60). Washington's criminal history—as well as the escalating nature of his crimes—suggests that he is not easily deterred and would pose a danger to the community if released at this time.

Washington argues that he would not endanger the public if released because, while incarcerated, he has participated in "educational, vocational, and rehabilitative programming." Mot. at PageID.235. Washington also asserts that he has a standing employment offer "with Temp services." The Court commends Washington on his steps towards rehabilitation. However, his behavior in prison has not been model. Since sentencing, Washington has incurred prison discipline on four occasions. Inmate Discipline Data (Dkt. 59-4). Further, according to the BOP's records, Washington has refused to participate in several areas of programming, such as "antisocial peers," "cognitions," and "trauma." Inmate History (Dkt. 59-3).

Washington contends that the portion of his sentence that he has completed—over 60%—weighs in favor of releasing him. The fact that a prisoner has completed the majority of his sentence may weigh in his favor, but it is not dispositive. See, e.g., United States v. Brown, 2021 WL 1706767, at *5 (E.D. Va. Apr. 29, 2021) (denying compassionate release to a prisoner who had served over 75% of his sentence and had not committed any disciplinary infractions in the last 12 years due to "the nature and circumstances of [the defendant's] offense" and "his previous criminal history of violence and firearm-related offenses"). Here, the fact that Washington has completed the majority of his sentence is outweighed by the seriousness of his offense and the danger that he would commit further crimes if released now. Releasing Washington at this time would neither promote respect for the law nor protect the public's safety.

The § 3553(a) factors, therefore, weigh against granting Washington motion.

## II.  CONCLUSION

For the reasons stated above, Washington's motion for compassionate release (Dkt. 56) is denied.

SO ORDERED.

Dated: April 6, 2022　　　　　　　　　　　　s/Mark A. Goldsmith
　　　　Detroit, Michigan　　　　　　　　　　MARK A. GOLDSMITH
　　　　　　　　　　　　　　　　　　　　　　United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on April 6, 2022.

　　　　　　　　　　　　　　　　　　　　　　s/Karri Sandusky
　　　　　　　　　　　　　　　　　　　　　　KARRI SANDUSKY
　　　　　　　　　　　　　　　　　　　　　　Case Manager